IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JUSTIN GANDER,
      Petitioner,

vs.                                Case No.:  3:14cv520/MCR/EMT

SECRETARY DEPARTMENT OF CORRECTIONS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 18).  Petitioner filed a reply (ECF No. 25).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 18).[1]  Petitioner was charged in the Circuit Court in and for Okaloosa County, Florida, Case No. 2011-CF-1306, with one count of carjacking without a weapon (Count

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 18).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

1) and one count of battery upon a person 65 years of age or older (Count 2) (Ex. B). Following a jury trial, Petitioner was found guilty as charged (Exs. D, F). On April 4, 2012, the court adjudicated Petitioner guilty and sentenced him as a prison releasee reoffender ("PRR") and a habitual felony offender ("HFO") to concurrent terms of thirty (30) years in prison, followed by ten (10) years of probation, with pre-sentence jail credit of 272 days (Exs. H, J1). Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D12-1875 (Exs. K, S). While the appeal was pending, the trial court corrected Petitioner's sentence and resentenced him on Count 2 to an HFO sentence of ten (10) years in prison (Exs. L, O, P, Q, R1). On June 18, 2013, the First DCA affirmed the judgment per curiam without written opinion (Ex. U). <u>Gander v. State</u>, 145 So. 3d 100 (Fla. 1st DCA 2013) (Table). The mandate issued July 5, 2013.

On September 23, 2013, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. V). In an order rendered October 17, 2013, the state circuit court dismissed the motion for failure to comply with the requirements of Rule 3.850(c) and (n) (Ex. W). The dismissal was without prejudice to Petitioner's filing an amended motion within 60 days (*id.*). Petitioner filed an amended motion on October 23, 2013 (Ex. X). In an order rendered November 5, 2013, the state circuit court struck the amended motion as facially insufficient, without prejudice to Petitioner's filing a second amended motion within 60 days (Ex. Y). Petitioner filed a second amended motion on November 13, 2013 (Ex. Z). The circuit court summarily denied it on November 20, 2013 (Ex. AA). Petitioner appealed the decision to the First DCA, Case No. 1D13-6188 (Exs. BB, CC). The First DCA affirmed the decision per curiam without written opinion on June 2, 2014, with the mandate issuing July 30, 2014 (Ex. EE). <u>Gander v. State</u>, 141 So. 3d 1204 (Fla. 1st DCA 2014) (Table).

Petitioner filed the instant federal habeas action on September 15, 2014 (ECF No. 1).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

Case No.: 3:14cv520/MCR/EMT

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neeley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an

unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Richter). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El</u> <u>v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.,* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* <u>Gill</u>, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    <u>Ground One: "Whether Defendant was denied effective assistance of counsel when counsel failed to properly argue in support of motion for judgment of acquittal, thereby failing to preserve issue for appellate review."</u>

Petitioner alleges that after the State rested its case, trial counsel made a motion for judgment of acquittal ("JOA"), arguing that the State failed to present sufficient evidence to satisfy all of the elements of both offenses (ECF No. 1 at 5–6). Petitioner alleges counsel should have argued that there was a complete lack of evidence that violence or assault was used in the taking of the victim's vehicle, and that there was insufficient evidence of force or putting in fear (*id.*). He alleges counsel should have argued that there were no weapons, threats, gestures, or words used, for example, he did not block the victim from exiting the vehicle, stand over him in an imposing manner, threaten him with words or actions, yell, scream, or make any loud noise (*id.*). Petitioner acknowledges, however, that the victim testified that Petitioner "gave him a little push" as Petitioner entered the passenger side of the victim's vehicle and slid to the driver's side as the victim was sliding out of the driver's side, and the victim testified that he was "absolutely" afraid (*see* ECF No. 1 at 5–6; ECF No. 25 at 1–2). Petitioner contends that if counsel had made this more specific argument in support of the motion for JOA, there is a reasonable probability the trial court would have granted it; and even if the trial court denied the motion, there is a reasonable probability he would have succeeded on appeal (*id.*).

Respondent concedes that Petitioner presented this claim to the state courts in his second amended Rule 3.850 motion, and that the state circuit court adjudicated the claim on the merits (*see* ECF No. 18 at 17–20). Respondent also concedes that Petitioner presented the issue to the First DCA in his appeal of the lower court's decision, and that the appellate court adjudicated the claim on the merits (*id.*). Respondent states that it thus "appears" that Petitioner satisfied the exhaustion requirement of § 2254(b)(1)(A), but Respondent qualifies that the State does not concede or waive the exhaustion defense (*id.* at 19 n.4). Respondent contends the state court's adjudication of Petitioner's claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law (*id.* at 20–25).

        1.        Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If

Petitioner fails to make a showing as to either performance or prejudice, Petitioner is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not,

or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  See Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.       Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his second amended Rule 3.850 motion (Ex. Z at 2–3).  The state circuit court adjudicated the claim as follows:

> In **Ground One**, Defendant claims that counsel was ineffective by making a boilerplate motion for judgment of acquittal on the carjacking charge (Count 1). He alleges that counsel should have argued that the evidence was insufficient to establish that force, violence, assault, or putting in fear was used in the course of the taking.  He also alleges that, had counsel done so, there exists a reasonable probability that the Court would have granted the motion.  He further alleges that, even if the Court had denied the motion, the issue would have been preserved for

appellate review, and the First District would have reversed and remanded based on current case law.

To prove the crime of carjacking, the State must prove the following three elements beyond a reasonable doubt:

(1) The defendant took the motor vehicle from the person or custody of the victim;

(2) Force, violence, assault, or putting in fear was used in the course of the taking; and

(3) The taking was with the intent to temporarily or permanently deprive the victim of his or her right to the motor vehicle or any benefit from it or to appropriate the motor vehicle to his or her own use of the use of any person not entitled to it.

*See* § 812.133(2)(b), Fla. Stat. (2011); Fla. Std. Jury Instr. (Crim.) 15.2. As evidenced by his allegations, Defendant only takes issue with the sufficiency of evidence regarding the second element.

At trial, James S[c]hilling (the victim) testified that Defendant entered his vehicle and pushed him, that he exited the vehicle quickly to protect his life, that it was a traumatic experience, and that he was very nervous.[FN 7: Exhibit B, Trial Transcript, pp. 26, 28–29, 33, 35, 39–43, 45, 55, 56–57, 58, 60–61]. Officer Caraly Alvarez (the responding officer) testified that it was not easy to get information from Mr. S[c]hilling because he was very nervous and scared.[FN 8: Exhibit B, Trial Transcript, pp. 96–97].

Consequently, even if counsel had made the arguments proposed by Defendant, the motion for judgment of acquittal would have still been denied, and the denial would have been affirmed on appeal. The evidence was sufficient to present a question for the jury on whether force, violence, assault, or putting in fear was used in the course of the taking. The Court therefore concludes that Defendant cannot demonstrate prejudice on this claim and the claim should be denied.

(Ex. AA at 73–74). Petitioner appealed the decision to the First DCA (Ex. CC). The appellate court affirmed the lower court's decision without written opinion (Ex. EE).

At trial, the victim, Mr. Schilling, testified that he was 81 years old on July 8, 2011 (Ex. D at 25). He testified that on that day, he got into his car, rolled down the driver's side window and the passenger side window, and drove to the Tom Thumb store to buy a newspaper (*id.* at 25–26).

Mr. Schilling testified that as he exited his car to go into the store, Petitioner asked him for money, but he ignored Petitioner (*id.* at 26). He testified that when he exited the store, Petitioner asked him for a ride, but he said "No" (*id.*). Mr. Schilling testified:

> I got in the car—as I got in the car, I pushed the button to lock the doors then I started the car and the first thing I know he had come around to the side, put his hand through the open door window and pushed the button to unlock the doors. He opened that door. He was in that car in a split second, gave me a push, I got out. He got in the driver's—he took off and that's the last I saw him.

(Ex. D at 26).

Mr. Schilling testified further:

> Q [by the prosecutor]: And sir, you indicated that when this person got in the vehicle that you ended up out of the vehicle. How did that happen?
>
> A. When he— when he opened the door—it all happened in a split second and when he opened the door he came—he came right in, gave a push and I was getting out because I wasn't about to do anything with him, you know, and I was getting out and he give [sic] me push and I got out and I looked around and he backed up and took off.
>
> Q. Okay. Sir, why were you starting to get out of the car when this person got in your car?
>
> A. Why did I start to get out?
>
> Q. Yes, sir.
>
> A. I was protecting my life.
>
> Q. How were you feeling at that point in time when this person got in your car?
>
> A. It was a traumatic experience, traumatic.
>
> Q. Were you afraid?
>
> A. Oh, yeah, absolutely. I'm nervous.

(Ex. D at 28–29). With regard to the push, Mr. Schilling clarified, "He put his hands on me. I was getting out of the car but he did put his hands on me and give me a push" (*id.* at 39). Mr. Schilling

testified that Petitioner was young, muscular, and "looked strong" (*id.* at 48, 58). He testified that he was so nervous after the incident that the responding officer had to write out his statement for him (*id.* at 35).

Officer Caraly Alvarez testified that upon being dispatched to the Tom Thumb store, she spoke with Mr. Schilling (Ex. D at 96–97). She testified that he seemed scared and nervous (*id.* at 96). She testified that she took two statements from Mr. Schilling, one that he wrote, and the other that she wrote for him (*id.* at 97).

Robbery is a necessarily lesser included offense of carjacking; the elements of two offenses are identical, except that robbery is broader than carjacking, in that it involves taking of money or other property, while carjacking is limited to motor vehicle robbery. *See* <u>Cruller v. State</u>, 808 So. 2d 201, 204 (Fla. 2002); <u>Fryer v. State</u>, 732 So. 2d 30 (Fla. 5th DCA 1999). In <u>Magnotti v. State</u>, the Fourth District explained:

> "The fear contemplated by the [robbery] statute is the 'fear of death or great bodily harm.'" *Smithson* [*v. State*, 689 So. 2d [1226] 1228 [(Fla. 5th DCA 1997)] (quoting *Brown v. State*, 397 So. 2d 1153, 1155 (Fla. 5th DCA 1981)). The rule in this regard is that if the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person, then the victim may be found to be in fear for the purpose of the robbery statute, and actual fear need not be proved. *See State v. Baldwin*, 709 So. 2d 636 (Fla. 2d DCA 1998). Thus, the controlling factor is not necessarily the victim's subjective state of mind, but whether a jury could conclude that a reasonable person, under like circumstances, would have felt sufficiently threatened to accede to the robber's demands. *See Woods v. State*, 769 So. 2d 501 (Fla. 5th DCA 2000).

842 So. 2d 963, 965 (Fla. 4th DCA 2003); *see also* <u>Baldwin</u>, 709 So. 2d at 637–38 ("[T]he test [putting in fear] does not require conduct that is, itself, threatening or forceful. Rather, a jury may conclude that, in context, the conduct would induce fear in the mind of a reasonable person notwithstanding that the conduct is not expressly threatening."); <u>State v. Hawkins</u>, 790 So. 2d 492 (Fla. 5th DC 2001) (to convict a person of robbery, it is not necessary to show that actual violence was used).

Here, not only did the 81-year-old victim testify that he was afraid (he testified that Petitioner was young, muscular, and appeared physically strong; that he was "absolutely" afraid of Petitioner; that Petitioner "put his hands on" him and pushed him; and that he got out of the car to "protect[ ]

[his] life"), but the circumstances of the crime were also such that the jury could conclude that fear of death or great bodily harm was objectively justifiable (i.e., a reasonable person would be afraid if an unknown stranger put his hand through a car window, intentionally unlocked the door, let himself into the car, and pushed the driver out of the car after the driver denied him a ride; and a reasonable person would have an objective belief or fear that harm would come to him if he did not comply).

The state post-conviction court determined that counsel's failure to argue the motion for JOA in a more artfully or detailed manner did not prejudice Petitioner, because the evidence was sufficient to present a question for the jury on whether force, violence, assault, or putting in fear was used in the course of the taking. The undersigned cannot say that this conclusion was contrary to or an unreasonable application of <u>Strickland</u>, especially in light of the First DCA's rejection of Petitioner's sufficiency of the evidence argument on direct appeal (*see* Exs. S, U).[3] *See* <u>Stephens v. Sec'y, Fla. Dep't of Corr.</u>, 678 F.3d 1219, 1227 (11th Cir. 2012) (state post-conviction court's conclusion that petitioner was not prejudiced by counsel's making "bare bones" motion for JOA and motion for new trial because, on direct appeal, state court both acknowledged that claims were unpreserved and denied them on the merits by finding there was sufficient evidence to support petitioner's conviction, was not contrary to or an unreasonable application of clearly established federal law). Therefore, Petitioner failed to demonstrate he is entitled to relief on Ground One.

B.    <u>Ground Two: "Whether Defendant was denied effective assistance of counsel when counsel interfered with Defendant's right to testify."</u>

Petitioner alleges he informed trial counsel that he wished to testify in his own behalf (ECF No. 1 at 6–8). He alleges counsel responded that if Petitioner testified, he would not prepare him for his testimony and "would simply announce to the court Defendant wished to speak and that counsel would sit down and not participate" (*id.*). Petitioner alleges he chose not to testify, because he feared that counsel would abandon him in the middle of trial if he did not follow counsel's advice (*id.*). Petitioner alleges counsel also advised him that if he testified, the State would "eat him alive"

---

[3] In the State's answer brief on direct appeal, the State argued that counsel's motion for JOA was insufficient to preserve the issue of the trial court's denial of the motion for JOA; however, the State additionally argued that, assuming that counsel's argument was sufficient to preserve the issue, the trial court properly denied the motion for JOA (Ex. T). The First DCA affirmed the trial court's ruling without written explanation (Ex. U).

with his prior convictions, and that the State could inquire as to the nature of his prior convictions (*id.*). Additionally, Petitioner alleges that neither counsel nor the court advised him that it was his decision, alone, whether or not to testify, and he was under the mistaken belief that he could not "go against counsel's wishes" (*id.*).

Petitioner alleges that if he had testified, he would have testified that as he was entering Mr. Schilling's vehicle, he was not intending to take the car; instead, he thought that if he sat in the passenger seat, Mr. Schilling would give him the ride that he was requesting (ECF No. 1 at 7). He alleges he would have told the jury that he never thought about taking the vehicle until after Mr. Schilling exited the car, and then he thought, "Well, if he doesn't want to give me a ride, I'll just drive myself." (*id.*). Petitioner alleges he also would have testified that he never threatened, forced, or asked Mr. Schilling to exit the vehicle (*id.*). He alleges he would have testified that he did not intentionally push Mr. Schilling; rather, the contact was merely incidental as the two of them were moving about at the same time (*id.*). Petitioner alleges he would have admitted that he was guilty of grand theft auto, but not of carjacking or battery on a person over 65 years old (*id.*).

As with Ground One, Respondent concedes that Petitioner presented this claim to the state courts in his second amended Rule 3.850 motion, and that the state circuit court adjudicated the claim on the merits (*see* ECF No. 18 at 26–28). Respondent also concedes that Petitioner presented the issue to the First DCA in his appeal of the lower court's decision, and that the appellate court adjudicated the claim on the merits (*id.*). Respondent states that it thus "appears" that Petitioner satisfied the exhaustion requirement of § 2254(b)(1)(A), but Respondent qualifies that the State does not concede or waive the exhaustion defense (*id.* at 27 n.6). Respondent contends the state court's adjudication of Petitioner's claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law (*id.* at 28–32).

       1.       Clearly Established Federal Law

The <u>Strickland</u> standard is the clearly established federal law applicable to this claim.

       2.       Federal Review of State Court Decision

Petitioner raised this claim as Ground Two in his second amended Rule 3.850 motion (Ex. Z at 4–5). The state circuit court adjudicated the claim as follows:

In **Ground Two**, Defendant claims that counsel was ineffective for interfering with his right to testify. The Court finds that this claim is facially insufficient in that Defendant fails to allege prejudice. Because Defendant has been given an opportunity to amend, the Court concludes that this claim should be dismissed with prejudice. *See* Fla. R. Crim. P. 3.850(f)(2); *Nelson v. State*, 977 So. 2d 710, 711–12 (Fla. 1st DCA 2008); *Oquendo v. State*, 2 So. 3d 1001, 1006 (Fla. 4th DCA 2008).

(Ex. AA at 14). Petitioner appealed the decision to the First DCA (Ex. CC). The appellate court affirmed the lower court's decision without written opinion (Ex. EE).

It is the defendant's right ultimately to decide whether to testify, however, counsel has the duty to advise the defendant "in the strongest possible terms" not to testify if counsel believes that is the wiser course. *See* <u>United States v. Teague</u>, 953 F.3d 1525, 1533 (11th Cir. 1992). Although an attorney may be ineffective for preventing the accused from testifying, Petitioner must also show that he was prejudiced as a result. *See* <u>Nichols v. Butler</u>, 953 F.2d 1550, 1553 (11th Cir. 1992). As in all claims of ineffective assistance of counsel, Petitioner maintains the burden of establishing his contentions; thus, he must produce something more than a bare, unsubstantiated, self-serving allegation that his counsel prevented him from taking the stand. *See* <u>Underwood v. Clark</u>, 939 F.2d 473, 476 (7th Cir. 1991). Indeed, a conclusory assertion that counsel did not allow a defendant to testify, without particular factual allegations as to both attorney error and prejudice to the outcome, is insufficient to warrant an evidentiary hearing. *See id.*; <u>Siciliano v. Rose</u>, 834 F.2d 29, 30–31 (1st Cir. 1987). To satisfy <u>Strickland</u>'s prejudice standard, the likelihood of a different result must be "substantial," not just "conceivable." *See* <u>Richter</u>, 562 U.S. at 112 (citing <u>Strickland</u>, 466 U.S. at 693).

In this case, the record demonstrates that Petitioner's testimony would have completely undermined the theory of defense presented to the jury. It is obvious from defense counsel's opening statement, cross-examination of the State's witnesses, and presentation of a defense witness and photographic evidence, that the theory of defense was that there was insufficient evidence identifying Petitioner as the man who entered Mr. Schilling's car and drove it away from the Tom Thumb (*see* Ex. D at 19–24, 37–54, 66–68, 87–91, 102–06, 109–10, 116–19, 125–26, 131–32, 156–58, 170–78, 186–89, Ex. E3). If Petitioner had testified as he says he would have, he would

have completely destroyed this identification defense by admitting not only that he entered Mr. Schilling's car, but that he was guilty of grand theft auto.

Additionally, there is no reasonable probability that the jury would have believed Petitioner's testimony that he did not intend to take Mr. Schilling's car when he entered it. Petitioner alleges he would have admitted that he was guilty of grand theft auto, but not of carjacking. But by admitting the crime of grand theft auto, Petitioner would have been admitting the same intent that is required to prove the "taking" elements of carjacking, namely, that he: (1) knowingly and unlawfully obtained or used Mr. Schilling's car, and (2) he did so with intent to, either temporarily or permanently, (a) deprive Mr. Schilling of his right to the car or any benefit from it, or (b) appropriate Mr. Schilling's car to his own use. *See* Fla. Stat. § 812.014(2)(c)6.; Fla. Std. Jury Instr. (Crim) 14.1. Further, in light of the undisputed evidence that Mr. Schilling had just told Petitioner flat-out that he would not give him a ride, yet Petitioner still approached Mr. Schilling's car, reached through the open window, unlocked the locked door, got into the car without Mr. Schilling's consent, and sat down, there is no reasonable probability that the jury would have believed Petitioner's self-serving testimony, that he entered Mr. Schilling's car because he thought that Mr. Schilling would give him a ride if he sat in the passenger seat, and that after Mr. Schilling exited the car, he simply thought, "Well, if he doesn't want to give me a ride, I'll just drive myself." Also, the prosecutor surely would have impeached Petitioner's credibility with the fact that he had been previously convicted of twelve felonies (*see* Ex. I). *See* Jackson v. State, 25 So. 3d 518, 526 (Fla. 2009); Fla. Stat. § 90.610 (permitting impeachment by conviction of certain crimes, including felonies).

Additionally, Petitioner states he would have testified that he never threatened, forced, or asked Mr. Schilling to exit the vehicle. However, the jury heard the substance of that testimony from Mr. Schilling, who testified that the man who entered his vehicle did not yell, scream, say anything, or make any noise (Ex. D at 33, 45). Petitioner also alleges he would have testified that he did not intentionally push Mr. Schilling; instead, the contact was merely incidental as the two of them were moving about at the same time (*id.*). However, defense counsel elicited testimony along these lines from Mr. Schilling:

Q. So then you got in the car and he opened the door—

    A.  From the other side, right.

    Q.  And when you saw that in a split second you opened your door and you were heading out?

    A.  Yeah, but he slid—it was a split second all this happened.  He slid in that thing and pushed me a little bit and as I was opening the door at the same time getting out.  It all happened—he got in—I mean, just happened real quick.

    Q.  Okay.  So I just want to be clear.  So your body posture is you're moving to get out the door?

    A.  Right.

(Ex. D at 45).  Therefore, Petitioner failed to show a reasonable probability that his testimony on these issues would have changed the jury's verdict.

    The state courts' determination, that Petitioner failed to show he was prejudiced by trial counsel's error with respect to advising him regarding his right to testify, was not an unreasonable one.  *See* Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1130 (11th Cir. 2012) (in light of the state court's unrebutted finding that petitioner would not have been credible in reasserting his innocence and that his proposed testimony would have been cumulative, the court's determination, that any failure by trial counsel to inform petitioner of his right to testify did not undermine its confidence in the outcome of the proceeding, was not an unreasonable one).  Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.

    C.    Ground Three:  "Whether Defendant was denied effective assistance of counsel based on counsels [sic] cumulative errors."

    Petitioner argues that the cumulative effect of the alleged errors of counsel, identified *supra* in Grounds One and Two, casts doubt on the reliability of the result of his trial (ECF No. 1 at 8–9).

    Respondent concedes that Petitioner presented this claim to the state courts in his amended Rule 3.850 motion, and that the state circuit court adjudicated the claim on the merits (*see* ECF No. 18 at 32–33).  Respondent also concedes that Petitioner presented the issue to the First DCA in his appeal of the lower court's decision, and that the appellate court adjudicated the claim on the merits (*id.* at 33).  Respondent states that it thus "appears" that Petitioner satisfied the exhaustion requirement of § 2254(b)(1)(A), but Respondent qualifies that the State does not concede or waive

the exhaustion defense (*id.* at 33 n.8). Respondent contends that the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief; therefore, if cognizable, the state court's rejection of Petitioner's claim cannot be contrary to or an unreasonable application of clearly established federal law (*id.* at 33–34).

Petitioner raised this claim in Ground Three of his second amended Rule 3.850 motion (Ex. Z at 6). The state circuit court adjudicated the claim as follows:

> In Ground Three, Defendant claims that he was prejudiced by the cumulative effect of counsel's errors. Because the Court finds that Defendant's other claims are either without merit or facially insufficient, the Court further finds that his claim of cumulative error is without merit and should be denied. *See Israel v. State*, 985 So. 2d 510, 520 (Fla. 2008).

(Ex. AA at 14). Petitioner argued this issue on appeal to the First DCA (Ex. CC). The First DCA affirmed the lower court's decision without written opinion (Ex. EE).

In rejecting a similar "cumulative error" argument made by a § 2254 habeas petitioner, the Eleventh Circuit stated: "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 564 (11th Cir. 2009) (per curiam) (unpublished but recognized for persuasive authority). The Forrest panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564–65 (quoting United States v. Cronic, 466 U.S. 648, 659 n. 26, 104 S. Ct. 2039, 80 L .Ed. 2d 657 (1984)).

In light of Cronic and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, the state court's rejection of Petitioner's claim is not contrary to or an unreasonable application of clearly established federal law. *See* Wright v. Van Patten, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law."); Schriro v. Landrigan, 550 U.S. 465, 478, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this"); Reese v.

Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287–88 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law."); *see also* Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law). Petitioner is therefore not entitled to federal habeas relief on Ground Three.

IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 18th day of November 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

       **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**